**UNITED STATES of America, Plaintiff,**

v.

**Milton MOORE, aka Micky Moore, Defendant.**

**No. CR–84–0965–MHP.**

United States District Court, N.D. California.

April 17, 1985.

James A. Lassart, Asst. U.S. Atty., Drug Enforcement Task Force, San Francisco, Cal., for plaintiff.

William H. Du Bois, Du Boi, Hove & Clay, Oakland, Cal., for defendant.

## OPINION

PATEL, District Judge.

Defendant Milton (aka Micky) Moore was indicted on December 20, 1984 for two violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute heroin and cocaine) and a violation of 26 U.S.C. §§ 5861(c) and (d) (possession of a silencer). The government moved for a detention hearing pursuant to § 3142 of the newly enacted Bail

Reform Act of 1984 ("BRA"), 18 U.S.C. §§ 3141–3151.[1]

A detention hearing was held before a magistrate of this court on December 26, 1984. Based on the information presented at the detention hearing the magistrate concluded that the government had established probable cause to believe Moore violated 21 U.S.C. § 841(a)(1), thereby establishing a rebuttable presumption that defendant should be detained without bail prior to trial as a flight risk and a danger to the community. BRA § 3142(e).[2] He construed the presumption as placing the burden of persuasion on defendant to show by a preponderance of the evidence that the congressional determination is inapplicable in this case. He further ruled that the "clear and convincing evidence" requirement of § 3142(f) did not apply when the presumption was in force.[3] *See* Magistrate's Order at 7–8. The magistrate evaluated the defendant's arguments and the evidence proffered by the government and concluded that Moore failed to overcome the presumption that he was both a flight risk and danger to the community. He therefore ordered Moore detained pending trial since no condition or combination of conditions could reasonably assure his appearance at trial or the safety of the community.

Moore now moves the court to review the detention order filed by the magistrate pursuant to § 3145(b) of the Act. He challenges the constitutionality of the BRA on its face and as applied.[4] His motion makes the following arguments: (1) the Act violates his Eighth Amendment right to bail, (2) the rebuttable presumption established in § 3142 is unconstitutionally vague in the context of the statute and violates both the equal protection and due process provisions of the Fifth Amendment, and (3) the government's position on the manner of establishing probable cause violates due process. Both parties have briefed the constitutional issues and have presented oral argument before the court.

Having considered the parties' papers and oral arguments, the court finds that the Act can be construed so as to preserve its constitutionality. The court's conclusions regarding the constitutionality of the Bail Reform Act are set forth in Part I of this order. In addition, based on its review of the information presented to the magistrate and to this court, and on the arguments of counsel before the court, the court concludes that defendant Moore should be detained pending trial because no condition or combination of conditions will reasonably assure the safety of the community. Part II of this order presents the court's findings regarding the application of the Act to Moore.

*Discussion*

## I. THE CONSTITUTIONALITY OF THE BAIL REFORM ACT

### 1. *Right to Bail*

■ Defendant mounts only a limited attack on the BRA under the Eighth Amendment. He does not assert an absolute

---

1. The new Act substantially altered existing bail law. One of the most significant changes was the creation of statutory authority for preventative detention for certain classes of defendants should a court find following a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

2. Section 3142(e) reads in relevant part: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)...."

3. Section 3142(f) states in part "[t]he facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."

4. Moore raised the constitutionality of the Act before the magistrate, but the magistrate declined to rule on the issue because the Act was not patently unconstitutional.

right to bail. Instead, he argues that a defendant's right to bail "gives way only to legitimate state concerns presented in a particular case." Defendant's Memorandum at 5. *See U.S. ex rel. Goodman v. Kehl,* 456 F.2d 863, 868 (2d Cir.1972) ("we perceive no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons."). He contends, however, that the procedures of the Act as construed by the magistrate do not allow the court to evaluate the facts presented in individual cases.[5]

In *United States v. Edwards,* 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), the court painstakingly traced the history of the excessive bail clause of the Eighth Amendment from its roots in the English common law to its adoption into the Bill of Rights. *Edwards* concluded that the history of the clause showed that it was designed to prohibit excessive bail for bailable offenses and not to prevent Congress from designating nonbailable offenses. Hence, the court refused to find a constitutional right to bail in criminal cases. 430 A.2d at 1331. The legislative history of the BRA specifically adopts this reasoning, and defendant proffers nothing to contravene the historical analysis set forth in *Edwards.* S.Rep. No. 225, 98th Cong., 1st Sess. 22 (1983), U.S.Code Cong. & Admin.News 1984, p. 3182 ("S.Rep."). In *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952) the Supreme Court in dicta affirmed congressional power to designate bailable and nonbailable offenses:

> The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country.... Indeed, the very language of the Amendment fails to say that all arrests must be bailable.

342 U.S. at 545, 72 S.Ct. at 536 (1952) (denying bail to aliens pending deportation).[6]

Nonetheless, the case law is clear that legislative determinations regarding the right to bail cannot be arbitrary. *See, e.g., Sistrunk v. Lyons,* 646 F.2d 64, 70 (3rd Cir.1981) ("Because the Eighth Amendment does not delimit the denial of bail to capital offenses, Congress as well as the states could provide that other serious noncapital crimes are entitled to bail—subject, of course, to due process constraints."); *Hunt v. Roth,* 648 F.2d 1148, 1161 (8th Cir.1981), *vacated as moot sub nom. Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) "Congress and the states may reasonably legislate as to the right to bail for certain offenses 'provided the power is exercised rationally, reasonably, and without discrimination.'" (quot-

---

**5.** Notably, Moore does not contest that the state interest in safety to the community is legitimate. *Schall v. Martin,* — U.S. —, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted."). Moore also does not claim that the pretrial detention provisions of the statute undermine the presumption of innocence or are punitive.

**6.** The Supreme Court has never directly addressed whether the excessive bail clause of the Eighth Amendment provides a constitutional right to bail in criminal cases. Note that the Court's dictum in *Carlson* is at odds with its dictum in *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1,

96 L.Ed. 1 (1951), decided the same term: "From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." 342 U.S. at 4, 72 S.Ct. at 3 (addressing a statutory, not constitutional, right to bail).

ing *U.S. ex rel. Covington v. Coparo*, 297 F.Supp. 203 (S.D.N.Y.1969)). In *Hunt*, for example, the Eighth Circuit examined a provision of the Nebraska constitution that created an irrebuttable presumption denying bail to all persons charged with certain sex offenses. The court found the provision unconstitutional because it arbitrarily and conclusively precluded an individualized assessment of the propriety of pretrial release. 648 F.2d at 1164.

Based on the foregoing discussion, the court finds that the BRA does not offend the constitution merely by designating certain offenses as nonbailable. However, the statute will not pass constitutional muster unless its provisions are construed in such a way that defendant can make a showing based on the particular facts of the case in order to overcome the presumption.

## 2. *The Rebuttable Presumption*

Section 3142(e) of the statute states in part:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.) . . .

In other words, should the court find probable cause to believe that Moore committed the narcotics offense for which he was indicted the court must presume—subject to rebuttal by him—that he be detained without bail prior to trial as a flight risk and a danger to the community.

Defendant's challenge to the rebuttable presumption on vagueness, equal protection, and due process grounds is discussed below.

**7.** *U.S. v. Payden*, 598 F.Supp. 1388, 1395 (S.D.N.Y.1984) addressed and rejected a bona fide vagueness challenge to the BRA stating that

### A. *Vagueness*

■ Defendant claims that a conflict between the rebuttable presumption set up in § 3142(e) and the clear and convincing standard set forth in § 3142(f) renders the statute unconstitutionally vague. This argument misconstrues the nature of a vagueness challenge to a statute. A statute is void for vagueness "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The fact that different procedural sections of a statute must be construed by a court to fit together into a coherent whole does not render a statute unconstitutionally vague. The provisions are not so unclear that the court cannot interpret them.[7] Moreover, as the government points out, §§ 3142(e) and (f) are not in conflict—one sets out a burden of proof and the other sets out a standard of proof.

### B. *Equal Protection*

■ Defendant claims that the statute on its face violates the equal protection clause of the Fifth Amendment because it classifies certain offenses as creating a rebuttable presumption in favor of detention. In this case the class is persons charged with drug offenses punishable by more than ten years in prison. As defendant acknowledges, this group consists mainly of drug traffickers. He maintains this classification is overbroad and the rationale supporting it inaccurate.

Since the court has found no constitutional right to bail, the equal protection challenge is evaluated under a "rational basis" tests, so that the court merely inquires "whether it is conceivable that the classification bears a rational relationship to an end of government not prohibited by the Constitution." J. Nowack, R. Rotunda, and J.N. Young, *Constitutional Law* 591 (2nd ed. 1983). The court may not substitute its judgment for that of Congress' so long as

such a challenge is not appropriate because the statute does not prohibit conduct.

there is some reasonable basis for the classification. *See Dandridge v. Williams,* 397 U.S. 471, 485–7, 90 S.Ct. 1153, 1161–3, 25 L.Ed.2d 491 (1970).

The court finds that the equal protection challenge must fail in the instant case because Congress has articulated a reasonable basis for concluding that individuals in the class defendant seeks to protect present a greater flight risk or danger to the community than other defendants. The legislative history of this statute contains a lengthy discourse on the reasons Congress believed drug offenders constituted a danger to the community and a risk of flight. *See* S.Rep. at 20.

### C. *Due Process*

Defendant argues that due process at a minimum requires an individualized determination of whether a particular defendant warrants pretrial detention. He contends that the rebuttable presumption set forth in the BRA violates his due process rights under the Fifth Amendment.

The due process challenge raises two different issues: (1) whether the use of the presumption in a criminal context is appropriate, and (2) how to construe the presumption in light of other statutory directives so as to protect defendant's due process interests. This latter issue concerns the nature of the burden the rebuttable presumption places on defendant.

### 1. *The Constitutionality of Presumptions in Criminal Cases* [8]

In *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Court distinguished between "permissive presumptions" and "mandatory presumptions" and ruled that the constitutionality of the two types should be analyzed differently.

A permissive presumption is one which "allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecution of the basic one and which places no burden of any kind on defendant." 442 U.S. at 157, 99 S.Ct. at 2224. When reviewing such presumptions the Court requires defendant to demonstrate the presumption's invalidity "as applied to him." *Id.* In contrast, a mandatory presumption "tells the trier [of fact] that he or they *must* find the elemental fact from the proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection with the two facts." *Id.* The Court examines a mandatory presumption "on its face to determine the extent to which the basic and elemental facts coincide." *Id.* at 158, 99 S.Ct. at 2226. However, if a mandatory presumption merely shifts a burden of production to defendant, and if this burden of production is extremely low (such as being satisfied by "any evidence"), the impact of the mandatory presumption may be no more than that of a permissive presumption and "it may be proper to analyze it as such." *Id.* at 157 n. 16, 99 S.Ct. at 2225 n. 16.

The presumption set up by the § 3142(e) of the BRA flows as follows: if the government establishes probable cause to believe that Moore committed the narcotics offense for which he was indicted (the basic fact), then it is presumed, subject to rebuttal, that he is a flight risk and danger to the community (the elemental fact) and should be detained without bail. The statutory framework sets up a mandatory rebuttable presumption, directing this court to examine the constitutional validity of the presumption on its face.[9]

---

**8.** This line of cases pertains to encroachments upon the presumption of innocence in the context of a criminal trial and is not necessarily controlling in the pretrial context. *See Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447 (1979) ("[t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials.... [I]t has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun."). *But see Stack v. Boyle,* 342 U.S. at 4, 72 S.Ct. at 3, *supra* n. 6.

**9.** Since the court construes the presumption as placing a low burden of production on defendant it may be sufficient to analyze the presumption as it applies to the facts of this case. The application of the statute to defendant Moore is discussed in Part II of this order.

The constitutional test for a mandatory presumption is whether there is a "rational connection" between the basic and elemental facts. "[A] criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed [elemental] fact is more likely than not to flow from the proved [basic] fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969) (striking down a presumption allowing a jury to infer from possession of marijuana that defendant knew the marijuana was imported illegally). The Court specifically instructs lower courts to give substantial weight to congressional determinations underlying statutory presumptions when assessing their constitutionality:

> The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it.

*United States v. Gainey*, 380 U.S. 63, 67, 85 S.Ct. 754, 757, 13 L.Ed.2d 658 (1965). Although the Court has in the past taken it upon itself to reevaluate congressional determinations establishing presumptions, it has done so only after determining that "the legislative record does not supply an adequate basis upon which to judge the soundness of the ... presumption." *Leary*, 395 U.S. at 38, 89 S.Ct. at 1549.

Again the court should not substitute its judgment for that of the legislature. Congress has explicated in the legislative history its reasons for presuming that individuals charged with serious narcotics offenses present a flight risk and danger to the community. S.Rep. at 20. Whatever the court's view of the wisdom of this determination, it cannot say "the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them." *Tot v. United States*, 319 U.S. 463, 467-68, 63 S.Ct. 1241, 1244-45, 87 L.Ed. 1519 (1943). Thus, the court finds that the rebuttable presumption is not unconstitutional on its face. *Accord, United States v. Jessup*, 757 F.2d 378, 386-387 (1st Cir.1985).

### 2. Construing the Rebuttable Presumption

In construing the provisions of the BRA, the court is mindful of its obligation to interpret the statute in such a manner as to preserve its constitutionality. *Califano v. Yamasaki*, 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) ("if 'a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided,' a court should adopt that construction."). Following the lead of the *Califano* court, this court will "assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary." *Id.*

#### a. The Need for Clear and Convincing Evidence

■ In the proceeding below, the magistrate concluded that the "clear and convincing evidence" requirement did not apply when the rebuttable presumption was in force. This court respectfully disagrees with this interpretation. Section 3142(f) sets out the procedures for detention hearings. Nowhere in the statute or the legislative history does it suggest that different procedures—affording different levels of due process protection—should apply to a detention hearing where the rebuttable presumption is in force as opposed to when the presumption is not in force.

The statute clearly states that a finding that a defendant should be detained prior to trial because he is a danger to the community should be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). According to the legislative history, "[t]his provision emphasizes the requirement that there be an evidentiary basis for the facts that lead the judicial officer to conclude that a pretrial detention is necessary." S.Rep. at 22. Curiously, however, the

terms of the statute require that *only* a finding regarding danger to the community need be supported by clear and convincing evidence. The statute is silent as to what standard of proof is needed to support a determination that a defendant is a flight risk.

The presumption established by Congress for defendants charged with serious narcotics offenses allows for pretrial detention upon a finding that defendant presents either a risk of flight or a danger to the community. In view of the substantial detriment pretrial detention imposes upon a defendant, *see Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951), the court finds that the standard of proof necessary for detaining a defendant as a flight risk should be no less than the standard required to support a finding of danger to the community—"clear and convincing evidence." [10] The court will construe the statute accordingly. *Contra United States v. Freitas*, 602 F.Supp. 1283, 1292 (N.D.Cal. 1985) (applying a "preponderance of the evidence" standard to findings of flight risk).

### b. *The Burden the Presumption Places on Defendant*

■ Neither the plain language of the statute nor its legislative history specifies the burden the rebuttable presumption places on a defendant charged with committing a serious drug offense. Courts construing the Act already have reached inconsistent results as to whether the presumption shifts to defendant the burden of producing evidence or merely the burden of persuasion. *Compare Jessup*, at 381; *U.S. v. Payden*, 598 F.Supp. 1388, 1397 (S.D.N.Y.1984); *and Freitas*, at 1289 (rebuttable presumption shifts burden of production) *with United States v. Aiello*, 598 F.Supp. 740, 744 (S.D.N.Y.1984) (rebuttable presumption shifts burden of persuasion). The government relies on *Aiello* as "persuasive authority" for the proposition that the statute shifts the burden of persuasion to the defendant. This court disagrees with the analysis of *Aiello* and finds instead that the rebuttable presumption shifts only a burden of production to defendant. The government retains the burden throughout the proceeding to show by clear and convincing evidence that no condition or combination of conditions would reasonably assure defendant's appearance at trial or the safety of the community.

*Aiello* predicated its analysis on the following legislative history: "it is appropriate [when the rebuttable presumption is in effect] that the burden shift to defendant to *establish a basis for concluding* that there are conditions of release sufficient to assure that he will not again engage in dangerous criminal activity pending trial." S.Rep. at 19 (emphasis added). 598 F.Supp. at 743–44. The *Aiello* court reads the legislative history to mean that "the burden would fall on defendants to rebut the ultimate facts presumed under the Act. Once a charge is made that a defendant is guilty of a 'grave' narcotics violation, and in the absence of information supplied by the defendant tending to rebut the presumption, the government has sustained its burden of showing a 'danger to society' or 'risk of flight'." *Id.* at 744. Under *Aiello* the amount of information defendant would have to put forth to rebut the presumption would vary depending on the strength of the government's probable cause case. If the probable cause case were strong, defendant would need more evidence to rebut the presumption than if the case were weak. *Id.* at 745.

There are several problems with this interpretation. First, the legislative history cited in *Aiello* is not directly applicable to situations such as the instant one where the government seeks to detain a defendant as a flight risk or danger to the community pursuant to a finding of probable cause that the defendant committed a serious narcotics offense. Rather, it pertains

---

**10.** The government could proffer no reason at oral argument why a different standard should apply to a finding of risk of flight and danger to the community and, in fact, conceded that the "clear and convincing" standard should apply to the risk of flight determination.

to another provision of the statute which allows the government to move for a detention hearing on the ground that a defendant is a danger to the community when he is charged with certain violent crimes and has been convicted of similar offenses in the past while on bail pending trial.

Even were this legislative history to apply to the instant situation, this court has serious doubts that Congress intended the requirement that defendant "establish a basis for concluding" that he or she is entitled to pretrial release to mean that the defendant must "persuade a trier of fact" that he or she is so entitled. The words themselves simply do not convey such a meaning. *Accord Jessup*, at 381 ("these words do not say that the burden shifts to the defendant, nor do they imply that it is up to the defendant to persuade the judicial officer").

In addition, in contrast to this language, the legislative history makes clear that in the context of post-conviction release pending sentencing or appeal the defendant must bear the burden of persuasion that he will not present a danger to the community or a risk of flight. The Senate Report states,

> It has been held that although the denial of bail after conviction is frequently justified, the current statute [the Bail Reform Act of 1966] incorporates a presumption in favor of bail even after conviction. It is this presumption that the Committee wishes to eliminate in section 3143 . . .
>
> Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal.

S.Rep. at 26 (explicating § 3143 of the BRA). Clearly, had Congress intended the pretrial detention provision of the BRA to be interpreted similarly it could have so stated. As the court noted in *Freitas*, since "Congress only felt comfortable shifting the burden of proof where the defendant has been convicted of a crime and his guilt established beyond a reasonable doubt[, it] would be inconsistent to infer

that Congress had a similar intent with respect to a defendant being held on probable cause." At 1289. *See also Jessup*, at 381–382 ("Congress knew how to create a 'burden of persuasion' when it wanted to do so").

A further problem presented in *Aiello* is that the court reads the "clear and convincing" requirement out of the statute altogether, relying instead on the government's showing at the probable cause portion of the determination. This holding places too great a strain on the link set up by the rebuttable presumption. The probable cause determination merely establishes the presumption. The important consideration in determining whether a defendant should be detained without bail pending trial is not the strength of the evidence that defendant committed the narcotics offense but rather the strength of evidence regarding flight risk or danger to the community.

■ This court concludes that the government may not rest solely on the rebuttable presumption to support its motion to detain a defendant pending trial. Evidence that defendant committed the narcotics offense with which he is charged, even if very compelling, cannot by itself satisfy the requirement of § 3142(f) that a determination "that no condition or combination of conditions will reasonably assure the safety of any other person and the community" be supported by clear and convincing evidence. Indeed, to find otherwise would also violate the specific directive of § 3142(g), which provides that certain factors—including the history and characteristics of the defendant—be considered by the court in determining whether a particular defendant be detained.

The court's finding that the rebuttable presumption shifts only a burden of production to the defendant comports with Supreme Court rulings regarding presumptions in both criminal and civil cases. For example, in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Court addressed the effect of the burden of persuasion on the presump-

tion of innocence in a criminal trial.[11] *Sandstrom* concerned a jury instruction that read *"the law presumes* that a person intends the ordinary consequences of his voluntary acts." *Id.* at 517, 99 S.Ct. at 2455. The Montana Supreme Court upheld the instruction, interpreting it as merely placing a burden of production on defendant. The Court held the instruction unconstitutional because a reasonable juror could have interpreted the instruction as conclusive or as placing a burden of persuasion on defendant. *Id.* The Court ruled that *either* of the latter two interpretations violated due process. *Id.* at 517, 99 S.Ct. at 2455.

The Court analyzed the production burden in the civil context in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a Title VII case. *Burdine* held that once a plaintiff establishes a prima facie case (which the court equates with a rebuttable presumption),[12] the burden shifts to the defendant to produce evidence raising genuine issues of fact disputing the charge of discrimination. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254, 101 S.Ct. at 1094. Once defendant meets its burden, the presumption raised by the prima facie case "drops from the case," and plaintiff must show defendant's explanation is pretextual. *Id.* at 255 n. 10, 101 S.Ct. at 1094 n. 10. Plaintiff retains the burden of persuasion, which "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095.

Under *Burdine*, then, defendant may rebut the presumption merely by producing evidence "legally sufficient to justify a judgment for the defendant," but need not persuade. *Id.* at 255, 101 S.Ct. at 1094.

Applied to the instant situation, *Burdine* would dictate that defendant need come forward with some evidence to raise a dispute of fact as to whether he is a flight risk and danger to the community, but should not carry a burden of persuasion. *See also* Fed.R.Evid. 301 (presumption shifts only burden on production, not persuasion.)

In sum, the court finds that the rebuttable presumption of the BRA places only a burden of production on defendant and requires the government to rebut it with clear and convincing evidence. The government may not rely on the presumption alone to satisfy the clear and convincing evidence standard.[13] This construction affords the defendant an opportunity to show that the presumption does not apply to him so as to avoid any Eighth Amendment or Fifth Amendment problems stemming from "conclusive" presumptions.

### 3. *Procedural Due Process*

Defendant argues that a hearing based on proffers, documents, and the indictment insufficiently protects his due process interests. He further claims that fundamental fairness requires that he be entitled to: (1) notice of what matters the government will present, (2) an opportunity to call witnesses whose affidavits and proffers are presented by the government, and (3) discovery of prior statements by the government's witnesses. Neither of defendant's arguments has merit.

First, in *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) the Court ruled that a probable cause hearing does not require "the full panoply of adversary safeguards." The Court applied the *Gerstein* holding to the pretrial detention context in *Schall v. Mar-*

---

**11.** *See* discussion in n. 8, *supra.*

**12.** The *Burdine* court noted that " '[t]he word presumption properly used refers only to a device for allocating the production burden.' " (quoting F. James & G. Hazzard, Civil Procedure § 7.9, p. 255 (2d ed. 1977)). 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8.

**13.** In the instant case the government has come forward with evidence to supplement the presumption. The court need not address the effect of the presumption should neither the defendant nor the government come forward with additional information.

*tin,* —— U.S. ——, 104 S.Ct. 2403, 2417, 81 L.Ed.2d 207 (1984) (examining a statute establishing pretrial detention for juveniles). The procedures set forth for detention hearings under the BRA allow defendant to appoint counsel, to testify, to present witnesses on his behalf, to cross-examine witnesses, and to present evidence by proffer. 18 U.S.C. § 3142(f). Congress modeled these procedures after those held by the *Edwards* court as affording defendants adequate due process protections. S.Rep. at 22; *Edwards,* 430 A.2d at 1336–37 (*citing Gerstein,* 420 U.S. at 119, 95 S.Ct. at 865). In addition, this court has interpreted the statute as placing a low burden of production on defendant and as requiring that all findings directing the court to impose pretrial detention be supported by clear and convincing evidence. The court finds that these procedures provide defendant adequate due process protections.

■ Second, the court finds nothing in the statute to support defendant's position regarding discovery prior to the detention hearing. The legislative history indicates that Congress did not contemplate such discovery, and the statute upon which the BRA is modeled does not provide for it. S.Rep. at 12; *Edwards,* 430 A.2d at 1338. In addition, in light of the court's holdings regarding the burden on defendant at the detention hearing, the unavailability of the material defendant seeks in no way hampers his ability to present a defense. Defendant need only come forth with some information to establish that he is neither a flight risk nor a danger to the community. Certainly, such information is uniquely in his possession, not in the possession of the government. Thus, the court rejects the contention that the unavailability of discovery offends the due process clause of the Fifth Amendment.

## II. THE APPLICATION OF THE BAIL REFORM ACT

■ Defendant Moore has moved this court to review the magistrate's detention order pursuant to 18 U.S.C. § 3145(b). Subparagraph (b) provides in pertinent part

that a detainee may seek review of a detention order by a "motion for revocation or amendment of the order." The statute is silent as to the standard of review that the court should employ. Inasmuch as this motion essentially is the same as a "motion to amend" under the Bail Reform Act of 1966, 18 U.S.C. § 3147 (repealed), the court will exercise the *de novo* standard of review held appropriate under the former § 3147. *United States v. Smith,* 87 F.R.D. 693, 699 (E.D.Cal.1980), *aff'd,* 734 F.2d 22 (9th Cir.), *cert. denied Smith v. United States,* —— U.S. ——, 105 S.Ct. 211, 83 L.Ed.2d 142 (1984), *and cert. denied sub. nom. Fisherman v. United States,* —— U.S. ——, 105 S.Ct. 262, 83 L.Ed.2d 198 (1984).

The court held a detention hearing on March 14, 1985. Neither the government nor defendant called any witnesses. The parties submitted the matter based on the evidence presented to the magistrate, supplemental information and declarations supplied by defendant, and the arguments of counsel before this court.

Defendant's submissions consisted of a number of declarations by persons claiming to know defendant Moore and evidence of his music performance and production business. The declarations are not made under penalty of perjury and provide no information about the declarants. They generally recite the length of time the declarant has known the defendant. They state that he is a person of good character and does not pose a threat to the community. Each declaration is worded substantially the same.

There are other facts pertinent to detention known to this court as a result of hearing a motion to traverse the search warrant. They cannot be overlooked in considering whether defendant is a danger to the community. The informant who provided the information supporting the warrant testified before this court, as did the affiant, an Oakland police officer. The informant is related to defendant Moore. He recanted his statements made to the officer. This court concluded the informant

was not credible at the time he testified in court.

The officer offered a plausible explanation for the informant's recantation. The informant had previously acknowledged to the officer his fear of reprisal because he believed the defendant knew or would come to know that he was the informant. In fact, the informant advised the officer that the reason he gave up information regarding defendant Moore was to aid his own status in pending criminal matters. He believed this was worth the risk because Moore would be able to post bail shortly after his arrest and the case would drag through the state courts. The informant did not count on defendant Moore being charged in federal court and subject to detention without bail. The evidence suggests that when the informant realized Moore would not be out on bail and would shortly go to trial, he recognized the precariousness of his situation and feared for his safety. This court finds that the informant's change of testimony was primarily motivated by fear of reprisal.

In light of the informant's testimony and the uncontroverted findings of the magistrate, the additional declarations are not persuasive. The magistrate's findings on this issue are adopted. This court concludes that the government has established by clear and convincing evidence that there are no conditions of release that would reasonably assure the safety of the informant and the community.

No other evidence was presented by the government in support of its contention that defendant is a flight risk. The additional declarations and evidence submitted by defendant are also considered in connection with this further grounds for detention.

The findings of the magistrate on the flight risk issue are adopted except those contained at page 15 of the Detention Order relating to the "fronting" of drugs. The government merely made a proffer that experts would testify to the practice of fronting drugs to dealers. No actual testimony has been given on this issue. Nor is there any evidence before the court that fronting of drugs occurred in this case. Consequently there are no facts from which this court can arrive at the conclusion, argued by the government, that in fronting situations the dealer, here Moore, is under a great deal of pressure to repay the person fronting the drugs. Being unable to repay, the argument continues, the defendant is likely to flee the jurisdiction. Since there is no reliable evidence supporting this finding the order is amended to delete lines 4 at page 15 through line 2 at page 16. In addition, the street value the government places on the drugs is not supported in the record and that amount is deleted from the order. This court finds the street value to be substantial but undetermined.

██ In view of defendant's substantial ties with the community, his record of making all prior court appearances in other matters and the other findings of the magistrate as amended herein, this court finds that the government has failed to establish by clear and convincing evidence that there are no conditions that would reasonably assure defendant's appearances in court. However, conditions for release need not be set. This court has already concluded that the defendant shall be detained because there are no conditions that will reasonably assure the safety of the informant and the community. Accordingly, defendant is committed to the custody of the Attorney General or his authorized representative and shall be detained pending trial subject to the conditions of 18 U.S.C. §§ 3142(i)(2), (3) and (4).

IT IS SO ORDERED.